# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

---

**NO.**

---

GREGORY LEE HARTSHORN, #250861          **Petitioner**

VERSUS

ROBERT TANNER, WARDEN          Respondent

**15-1915**

**SECT. C MAG. 1**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPLICATION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254) BASED ON THE AFFIDAVIT TESTIMONY OF FEDERAL DEFENDER CLAUDE KELLY AND NEWLY DISCOVERED EXCULPATORY EVIDENCE CONFIRMING THE CONVICTION IS OBTAINED IN VIOLATION OF THE CONSTITUTION AND FEDERAL LAWS OF THE UNITED STATES**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RESPECTFULLY SUBMITTED BY:

TENDERED FOR FILING

JUN - 3 2015

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

Gregory Lee Hartshorn, *Pro Se*
Elayn Hunt Correctional Center
Post Office Box 174
St. Gabriel, Louisiana 70776

## CERTIFICATE OF INTERESTED PARTIES
**************************************

Gregory Hartshorn certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**\*\*\*  Mr. Claude Kelly, Federal Defender for the U.S. District Court for the Eastern District of Louisiana**

**\*\*\* Jefferson Parish District Attorney's Office**
**District Attorney Paul Connick, Jr.;**
**First Assistant Steve Wimberly;**
**Chief of Trials Tim McElroy**
**Assistant District Attorney Thomas Block**
**Assistant District Attorney Shwanna McCarthy**
**John Romano**

## Jurisdiction
**********

This Court is vested with jurisdiction by virtue of 28 U.S.C. § 2241 and § 2254.

### Procedural History Relevant To The Instant § 2254 Petition
*****************************************************

On September 12, 2013, retained counsel Roger W. Jordan, Jr. (Mr. Jordan) obtained a copy of the district attorney's case file leading to the discovery of an exculpatory 911 recording never turned over to the defense, and never known to exist to either Hartshorn or his trial counsel Claude Kelly (Mr. Kelly).[1]

This discovery resulted in a meeting between Mr. Jordan and Mr. Kelly, at which time, Mr. Kelly was presented with the exculpatory evidence he failed to investigate.  Once reviewing the 911 tape and the transcriptions of the tape, Claude Kelly testifies under oath in his March 17, 2014, affidavit to his complete failure to protect Gregory Hartshorn's Sixth Amendment right.   **(Exhibit 1: Affidavit of Federal Defender Claude Kelly)**

On March 18, 2014, Mr. Jordan filed for post conviction relief in the trial court concerning the Mr. Kelly's affidavit and the exculpatory 911 tape.  On March 24, 2014, the trial court denied petitioner relief.

On May 4, 2014, Mr. Jordan filed timely writs to the Louisiana Fifth Circuit Court of Appeal.  On May 27, 2014, the Louisiana Fifth Circuit denied relief.

On June 25, 2014, Mr. Jordan filed timely writs to the Louisiana Supreme Court.  On March 27, 2015, the Louisiana Supreme Court denied review.

---

1   Mr. Claude Kelly is currently the Federal Defender for this U.S. District Court.  In all fairness, and with due respect to Mr. Kelly, he is the only participant that has taken responsibility for his role, and has tried to remedy the manifest injustices this case clearly presents.

The foregoing claims and evidence of Constitutional error have been presented to the State's highest court and are fully exhausted for purposes of § 2254(b)(1)(A).

## Table Of Contents
****************

Jurisdiction...................................................................................................................1

Procedural History.....................................................................................................1-2

Table Of Contents........................................................................................................2

Exhibits.....................................................................................................................2-3

Summary Of Argument...............................................................................................3-8

Argument Ground One..............................................................................................8-17

Argument Ground Two.............................................................................................17-20

Timeliness Of § 2254 Petition.................................................................................19-24

Conclusion.................................................................................................................24

Certificate Of Service................................................................................................25

Declaration Against Perjury......................................................................................25

## EXHIBITS ATTACHED
*************************

**EXHIBIT 1:** March 17, 2014 Affidavit of Trial Counsel Claude Kelly

**EXHIBIT 2:** Pro Se' Discovery Motion

**EXHIBIT 3:** Police Report (3/1/07)

**EXHIBIT 4:** Public Record Review and Payment Receipt

**EXHIBIT 5:** Discovery Sheet Signed May 25, 2007

**EXHIBIT 6:** Alliance Court Reporter Transcript of 911 Tape

**EXHIBIT 7:** Atlantis Recording Studio Transcript of 911 Tape

**EXHIBIT 8:** Trial Court Denial of Post Conviction Relief (3/24/14)

**EXHIBIT 9:** Louisiana Fifth Circuit Denial of Writ No. 14-KH-331 (5/27/14)

**EXHIBIT 10:** Louisiana Supreme Court Denial Of Writ No. 2014-KP-1344 (3/27/15)

**EXHIBIT 11:** Letter From Roger Jordan To Assistance District Attorney Shwanna McCarthy

### Summary Of Argument
### Introduction
*********************

Newly discovered evidence in the form of a 911 recording never provided to the defense even after request was made, and never investigated by counsel provides strong, independent evidence that Gregory Hartshorn is actually innocent of the charged crime of carjacking and, but for the underlying Constitutional violations, would not have pled guilty based on his counsel's advice. In fact, after reviewing the evidence counsel failed to investigate, Claude Kelly testifies under oath that had he investigate this evidence, or had the prosecution disclose this evidence, he would never have advised his client to plead guilty to the carjacking or the multiple offender bill of information. **(Exhibit 1: Affidavit of Claude Kelly)**

Gregory Hartshorn was denied Due Process in two respects. First, he was denied his Sixth Amendment right to effective assistance of counsel when his counsel failed to properly investigate and obtain a copy of this exculpatory 911 tape. This failure by Mr. Kelly comes even after Hartshorn initiated "open file discovery" Pro Se' with the prosecution on counsel's behalf. **(Exhibit 2: Discovery Motion)** Secondly, the State had an obligation to provide a copy of this tape to the defense prior to the guilty plea because as will be shown below, the contents

of the 911 tape are clearly exculpatory. The State's failure to provide this tape once requested violates the Constitution's Fourteenth Amendment and federal laws dictated by Brady v. Maryland and its progeny.

The sole complainant in this case, John Romano (Romano), reported to investigating officers that he was sitting in his vehicle with the motor running at the Shell Station on Lafayette St. in Gretna. Romano stated that an unknown white male, later identified as Gregory Hartshorn pulled him from his vehicle and fled in the vehicle. **(Exhibit 3: Police Report)** Despite Romano's version of this incident relayed to police in a report written 36 hours after this incident occurred, Hartshorn maintained to counsel, and at all times, that his criminal conduct was theft, not carjacking. Based on counsel Claude Kelly's advice and a lack of any evidence to support his defense at that time, Gregory Hartshorn pled guilty as charged.

Now, for the first time, hard evidence provided by the District Attorney's Office confirms without a doubt, petitioner's long maintained claim he committed theft, not carjacking has been true from day one. The return on a Public Records request filed by counsel Roger Jordan revealed this exculpatory 911 recording. **(Exhibit 4: Public Records Request/Payment Receipt)** A review of the discovery sheet signed May 25, 2007, proves the 911 tape was not provided in discovery. **(Exhibit 5: May 25, 2007 Discovery Sheet)** A review of Mr. Kelly's affidavit further confirms this tape was not provided in discovery, or in any other subsequent proceedings leading to the plea. **(Exhibit 1: Affidavit Of Claude Kelly)**

4

**A Review Of The Transcripts Of The 911 Tape Reveals An Abundance
Of Exculpatory Information Which Proves This Was A Theft And Not Carjacking**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

The 911 tape is a recording of the cashier at a Racetrack Service Station calling in the

report of a stolen van to the emergency dispatcher. In the background, <u>John Romano is captured</u>

<u>relating the events of the theft to the cashier only moments after this incident occurred.</u>  Two

transcripts of the tape are provided.  The first transcript is by a certified court reporter. **(Exhibit**

**6: Alliance Reporting, Inc.).**  The second transcript is an audio-enhanced version of the 911

tape done by Atlantis Recording Studio at the request of the defense. **(Exhibit 7: Audio**

**Enhanced Transcription).**

The following exchange is transcribed by the court reporter:

> **Cashier Karen (To Dispatcher):**  A white van, and it's probably
> loaded with papers.
> **John Romano (in background):**
> Yep.
> **911 Dispatcher:(to units)**
> ...loaded with papers. Fled to 19th street from
> Lafayette.
> **John Romano (in background):**
> ...that's where he jumped in my truck.
> **Police Unit (on radio):**
> All right. I'm in the next block. I'm going to come up
> Claire.
> **Cashier Karen: (to John Romano)**
> You want to sit down? Sit down for a minute.
> **911 Dispatcher:**
> Okay.

**John Romano (in background):**

I got out the van and got in the back of the truck –

**(Exhibit 6: Transcript Alliance Court Reporting, pp. 4-5)**

This initial exchange proves that John Romano had already gotten out of the van when Hartshorn entered the unattended vehicle. Thus, the 911 tape proves that John Romano was not "sitting in the vehicle," or "pulled from the vehicle." This was not carjacking. There was no force or intimidation used to gain control of this van. Rather, the 911 tape proves this incident was a theft (defined as "the misappropriation or taking of anything of value which belongs to another...[with][a]n intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking...(see Louisiana. R.S. § 14:67 Theft))

The evidence Mr. Kelly failed to investigate –the evidence the State failed to disclose, affirms without doubt that Hartshorn did not take the van "by the use of force or intimidation" as required to constitute carjacking. (see Louisiana R. S. § 14:64.2 Carjacking) This was Hartshorn's defense to counsel from day one.

Further exculpatory information proving this was a theft of an unattended vehicle and not a carjacking is revealed by the court reporter as the exchange continues:

**Cashier Karen: (to John Romano):**

"You were in the back taking papers out when he jumped in the front?"

**John Romano (in background):**

"I was coming out of the store.... and he pulled me to the street, and I fell."

**(Exhibit 6: Alliance Court Reporter, pp. 11-12)**

In the second transcription, the audio enhanced version, even more detail is provided in

6

this same exchange:

> **Cashier Karen: (to John Romano):**
>
> "You were in the back taking papers out when he jumped in the front?"
>
> **John Romano (in background):**
>
> "I was coming out the of the store and ran in the parking lot and grabbed the
>
> back door and was hanging on when he pulled me to the street and that's how I
>
> fell." **(Exhibit 7: Audio Enhanced Transcription pg. 3).**

This exchange proves John Romano's statements in the police report authored 36 hours after the theft of the vehicle he left unattended and running in the Shell Station parking lot are a total fabrication. **(Exhibit 3: Police Report)** Claude Kelly's failure to investigate and obtain this critical evidence in Hartshorn's defense is in violation of the U.S. Constitution's Sixth Amendment. **(Exhibit 1)** The States failure to disclose this exculpatory evidence in Hartshorn's defense after clearly requested violates the U.S. Constitution's Fourteenth Amendment and federal laws of the United States. **(Exhibit 5)** But for Constitutional errors committed by counsel and the State, Gregory Hartshorn would not have been forced to plead guilty to a crime he knew, and the evidence proves, he did not commit.

Most interestingly, Hartshorn has repeatedly endeavored to present evidence to the Court's that his criminal conduct was theft and not carjacking even before he received a copy of the withheld 911 tape.[2] Gregory Hartshorn did not have the 911 tape when he filed his prior

---

2 **State v. Hartshorn**, 24th J.D.C. 07-2393; **State v. Hartshorn**, 25 So.3d 172, 2009 La.App. LEXIS 1920 (La.App. 5 Cir. 2009), writ denied by 38 So.3d 298, 2010 La. LEXIS 1444 (La. 2010). **State v. Hartshorn**, No. 10-KH-681(La. 5 Cir. 10/06/10); **State v. Hartshorn**, No. 10-KH-1087 (La. 5 Cir. 2/11/11); **State ex rel. Hartshorn v. State**, 75 So.3d 915 (La. 2011)(No. 25-KH-2508); **Hartshorn v. Prince**, 2012 U.S. Dist. LEXIS 125710 (E.D. La., July 30, 2012); **State ex rel. Hartshorn v. State of Louisiana**, 2013 La. LEXIS 2146 (La., Sept. 27, 2013); **State ex. Rel. Hartshorn v. State of Louisiana**, 07-2393 (3/24/14); **State ex rel. Hartshorn v. State of Louisiana**, writ No. 14-KH-331 (La. 5 Cir. 5/20/14); **State Ex Rel. Hartshorn v. State of Louisiana**, writ No. 14-KP-1344 (La. Supreme Court 3/25/2015)

Pro Se' petitions, nor could he have had the 911 tape until the State created impediment of withholding this exculpatory tape was removed on September 12, 2013. **(Exhibit 4)**

Nevertheless, every Pro Se' pleading filed by Hartshorn reveals one aspect of this case, which Hartshorn has steadily maintained at all times, even before benefit of the exculpatory 911 tape, and that is: this case was a theft and not carjacking and but for Constitutional errors, Gregory Hartshorn would not have pled guilty. The 911 tape counsel failed to investigate and the State failed to disclose provides absolute corroboration that Gregory Hartshorn is actually innocent of the crime of conviction.

The prejudice suffered by Gregory Hartshorn as a result of this complete breakdown in the criminal justice system is devastating. Petitioner would not have pled guilty as charged to the carjacking and multiple offender bill of information had he known of this objective evidence proving what he has always declared to be true – that he did not commit the crime with which he was charged and forced to plead guilty to.

**GROUND ONE: The March 17, 2014, Affidavit Of Claude Kelly Is Clear And Convincing Evidence That Gregory Hartshorn Was Denied Effective Assistance Of Counsel When Claude Kelly Failed To Properly Investigate This Offense**
**************************************************

Gregory Hartshorn was denied effective assistance of counsel when his attorney failed to properly investigate this offense. As stated, this case involved a call to a 911 dispatcher to report this incident. As demonstrated by the affidavit of appointed counsel, Hartshorn maintained that this offense was a theft, not carjacking. However, without any other evidence to support his defense at that time, and based solely on Claude Kelly's advice, Gregory Hartshorn pled guilty to carjacking. **(Exhibit 1)**

8

In this case, two critical factors must be considered in understanding counsel's constitutionally ineffective assistance during his representation of Gregory Hartshorn; (1) the police report with the sole complainant John Romano's statements claiming he was "sitting in the vehicle" and was "pulled from the vehicle" was written some 36 hours after this incident took place and, (2) Gregory Hartshorn repeatedly maintained to Mr. Kelly that the police reports version of events was completely fabricated. When considering these two proven facts, at a bare minimum, effective counsel would have been aware that a 911 tape is a reporting of the incident to the emergency dispatcher at its most recent moment. As noted above, the tape counsel failed to investigate provides objective evidence that this incident was a theft and not a carjacking just as petitioner has declared from day one. This tape should have been included in the defense investigation, and failure of counsel to obtain this evidence deprived Gregory Hartshorn of his Sixth Amendment Right to effective assistance of counsel.

In Strickland v. Washington, 466 U.S. 668, 689-94, 104 S. Ct. 2052, 80 L. Ed. 2D 674 (1984), the United States Supreme Court set out a two-prong test for proving ineffective assistance of counsel. To obtain relief under the well-established Strickland test, Hartshorn must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 687-88, 694. see also Virgil v. Dretke, 446 F.3d 598, 608 (5th Cir. 2006). In other words, a defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant.

The U.S Supreme Court has held that the two-part Strickland test not only applies to

9

convictions after trial, but also applies, as in this case, to challenges to guilty pleas based on ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58, 106 S. Ct. 366, 88 L. Ed. 2D 203 (1985). In the context of a guilty plea, the <u>Strickland</u> prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, supra. To satisfy this standard, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>United States v. Smith</u>, 844 F.2d 203, 209 (5th Cir. 1988).

Claude Kelly testifies that his client consistently maintained "this crime was a theft and not a carjacking" throughout the entire ordeal. Gregory Hartshorn to this very day has never stopped declaring his actual innocence to carjacking, and that, but for counsel's errors, he would not have pled guilty but would have continued his insistence of going to trial. With Claude Kelly declaring that had he investigate the 911 tape before advising Hartshorn to plead guilty, "<u>he would not have advised his client to plead guilty as charged to the carjacking and the Multiple Offender Bill of Information,</u>" at long last, Gregory Hartshorn is no longer the only one declaring the truth of the fact that, but for counsel's errors rising to Constitutional magnitude, he would not have pled guilty but would have continued his insistence on going to trial. Id. **(Exhibit 1)**

Courts have long established that adequate investigation is a requisite of effective assistance. <u>Rummel v. Estelle</u>, 590 F.2d 103, 104 (5th Cir. 1979)(per curiam) ([I]nvestigation and preparation are the keys to effective representation," quoting ADA Projects on Standards for Criminal Justice, Standards Relating the Prosecution Function and the Defense Function 224 (App. Draft 1971)); <u>Gaines v. Hopper</u>, 575 F.2d 1147 (5th Cir. 1978)(per curiam); <u>United</u>

States v. Juarez, 672 F.3d 381 (U.S. 5th Cir. 2012)(counsel has a duty to independently research the law and investigate the facts surrounding the defendant's case); Strickland, supra.

There can be no question, Claude Kelly had an obligation under the Sixth Amendment to investigate the evidence in this case, including the 911 tape in this matter. When asserting a claim of failure to investigate, "[a] movant 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome' of the proceeding." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)); see also Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005)

Here, as demonstrated, defense counsel failed to properly investigate the instant offense prior to recommending Hartshorn plead guilty. Specifically, being Hartshorn literally initiated discovery with the prosecution Pro Se', Claude Kelly should have investigated and obtained a copy of the 911 tape at a bare minimum. Mr. Kelly admits in his affidavit that he neither requested a copy of the 911 tape, nor did he seek a subpoena duces tecum for the tape. A review of the 911 recording would have revealed to Mr. Kelly that Gregory Hartshorn's repeated declarations that this was a theft of an unattended vehicle, and not carjacking were true. Further, it would have revealed Hartshorn could have, more likely than not, convince a jury, or even the State that this was never a carjacking, and therefore, he should never have been advised by Claude Kelly to plead guilty. Claude Kelly declares under oath that had the 911 tape been available at the time of the guilty plea, Claude Kelly would have never advised his client to plead guilty to the carjacking or the multiple offender bill of information. Discovery of this evidence, no doubt, would have altered the outcome of this unreliable and fundamentally unfair proceeding. Furthermore, discovery of the 911 tape Mr. Kelly failed to

**11**

investigate has unequivocally "led counsel to change his recommendation of the plea." Hill v.

Lockhart, supra. The 911 tape Claude Kelly failed to investigate and the exculpatory

information it provides is fatal to the State's prosecution for carjacking. This failure by counsel

deprived Gregory Hartshorn of his Sixth Amendment right to effective counsel in ones defense.

### Gregory Hartshorn Was Prejudiced By Defense Counsel's Errors So Serious That Petitioner Was Denied Counsel As Mandated By The Sixth Amendment Of The United States Constitution
*************************************************

The resulting prejudice to Gregory Hartshorn by counsel's failure to investigate, which

would have led to the discovery of the 911 tape, is multi-fold and quite obvious. Petitioner was

deprived of the opportunity to present to a jury the evidence of John Romano on the 911

recording clearly stating "I was coming out of the store." This statement alone shows there was

no force or intimidation involved in the taking of the van. In the very least, Hartshorn was

deprived of evidence that would have substantially aided him in the critical stages of plea

negotiations. Further, with Claude Kelly failing to secure the exculpatory evidence from the

prosecution after his client initiated "open file discovery," Claude Kelly "entirely failed to

subject the prosecution's case to (any) meaningful adversarial testing" whatsoever and

prejudice in this situation must also be presumed.

The U.S. Supreme Court has spoken on the exact situation before this Court best in a

case decided the same day as Strickland: United States v. Cronic, 466 U.S. 648, 104 S.Ct.

2039, 2047, 80 L. Ed. 2D 657 (1984). In Cronic, the Court recognized that the Strickland

standard is inappropriate in some situations and prejudice may be presumed where the

defendant was completely denied counsel at a critical stage of the proceedings, or if counsel

"entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. At 659.

The record evidences that Hartshorn had to assume both the role of the accused, as well as the role of "advocate" against the State in his own defense. **(Exhibit 1)** Hartshorn literally initiated "open file discovery" with the State on counsel's behalf, and yet, Mr. Kelly still failed to investigate the exculpatory evidence in the prosecutions case file. **(Exhibit 2)** Gregory Hartshorn was not, and is not counsel as mandated by the Sixth Amendment. As noted above, the foundation of the prosecution's case for carjacking was built entirely on the allegations made by John Romano on the police report 36 hours after this incident. The very same police report petitioner repeatedly informed Mr. Kelly was a total fabricated version of the events. The exculpatory 911 tape capturing John Romano reporting this incident to police immediately after it occurred, the same 911 disk Claude Kelly admits he failed to investigate, was crucial in Hartshorn's defense. Claude Kelly's complete abandonment and failure to investigate the facts and evidence of this case allowed the prosecution's case to go completely unchallenged when petitioner had a factual and legal defense to the charged crime. Mr. Kelly's errors in failing to obtain this exculpatory evidence clearly resulted in prejudice to the extent that it undermined the functioning of the adversarial process and renders the outcome of this proceeding completely unreliable. Lockhart v. Fretwell, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2D 180 (1993); Sharp v. Johnson, 107 F.3d 282, 286 n.9 (5th Cir. 1997); see also Geders v. United States, 425.S. 80, 91, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976); Gideon v. Wainwright, 372 U.S. 335, 344-345, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

The "probable effect upon the outcome" of these proceedings had Gregory Hartshorn been afforded counsel as mandated by the Sixth Amendment is really quite clear. Gregory

Hartshorn has demonstrated with hard evidence much more than just a reasonable probability sufficient to undermine confidence in the outcome of these proceedings.  Claude Kelly entirely failed to subject the prosecution's case to meaningful adversarial testing, when Claude Kelly had the evidence right in front of him to destroy the prosecution's theory of the case but failed to investigate this evidence, and advised Hartshorn that his only alternative was to plead guilty to carjacking.  The "uninvestigated evidence" not only reveals Hartshorn in fact had a factual and legal defense to carjacking, but the "uninvestigated evidence" proves Hartshorn's actual innocence to carjacking.  The failure of Claude Kelly to exert even the minimal of effort to obtain this exculpatory evidence deprived Gregory Hartshorn of his Sixth Amendment Right to Counsel and his right to trial.

Whether this Court applies a straight forward application of the legal principals of Strickland, or Cronic, (actually even both), justice mandates Gregory Hartshorn is entitled to relief from the Constitutionally infirm guilty plea and conviction obtained in violation of his Sixth Amendment right to effective assistance of counsel for defense.

### The Guilty Plea In This Case Is Constitutionally Infirm Based On Being Entered By The Ill Advice Of Counsel Claude Kelly And Undermines The Free And Voluntary Nature Of The Guilty Plea
**************************************************

In the context of a guilty plea, a petitioner claiming that counsel's ineffectiveness rendered his guilty plea involuntary must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2D 203 (1985).  To be valid, a guilty plea must be voluntary, knowing, and intelligent. United States v. Washington, 480 F.3d 309, 315

(5th Cir.2007).  A plea is voluntary only if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."

But for the underlying Constitutional errors, the alternative courses of action open to Gregory Hartshorn rather than merely being forced to plead guilty was his fundamental rights to a fair trial by jury – to present the withheld exculpatory evidence to a jury in his defense to carjacking – his right to confront his sole accuser John Romano with impeaching material from no one other than, John Romano – his right to effective assistance of counsel during the critical stages of plea negotiations.   However, these viable alternative courses of action open to Hartshorn had counsel simply investigate the 911 tape, were actually foreclosed to Hartshorn due to the Constitutional violations committed by both counsel and the State.  As shown above, and evidence by Claude Kelly's affidavit, Mr. Kelly would never have advised Hartshorn to plead guilty but for the existence of the 911 tape he failed to investigate and the State failed to disclose.  Because Claude Kelly (and no one else to date) has ever bothered to listen to the truth of this incident, Gregory Hartshorn was deprived of his factual and legal defense when the evidence of his actual innocence to carjacking was in possession of the State the entire time.

Gregory Hartshorn did not "waive his Constitutional rights," but was literally stripped of them.  Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)); accord Bousley v. United States, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting Brady, 397 U.S. at 748).  The guilty plea in this case is anything but voluntarily or intelligently entered and Gregory Hartshorn definitely did not have access to the advice of competent counsel at any stage of these proceedings. **(Exhibit 1)**

15

`As the Court's have long held, providing (effective) counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004)(quoting Reed v. United States, 354 F.2d 227, 229 (5th Cir. 1965)).

**GROUND TWO: The Failure Of The District Attorney's Office To Disclose The 911 Tape After Request Was Made Violated Gregory Hartshorn's Right To Due Process Because The Information Was Material To The Issue Of Guilt And Punishment**
**************************************************************

Few constitutional principles are more firmly established by Supreme Court precedent than the rule that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2D 215 (1963); Banks v. Dretke, 540 U.S. 668, 691, 124 S. Ct. 1256, 1272, 157 L. Ed. 2D 1166 (2004).

This case involves application of the rule announced in Brady, in which, exculpatory evidence was not disclosed to the defense, although clearly requested. **(Exhibit 2)** Specifically, "Neither a copy of the 911 tape, nor any reference to its existence was provided in this discovery or in any subsequent proceedings during this representation" leading to the plea. **(Exhibit 1 and Exhibit 4)** At no time before the plea was Gregory Hartshorn or his counsel made aware of the existence of this exculpatory 911 recording which clearly refutes the State's theory of the case that this offense was a carjacking.

Although the record proves Hartshorn in fact requested all exculpatory evidence in possession of the State, the Supreme Court has consistently held the prosecution's duty to

**16**

disclose evidence material to either guilt or punishment applies even when there has been no request by the accused. Banks v. Dretke, Id. at 1272; Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286999); United States v. Agurs, 427 U.S. 97, 107, 96 S. Ct. 2392, 2399, 49 L. Ed. 2d 342 (1976). This duty also applies to impeachment evidence. United States v. Bagley, 473 U.S. 667, 676, 685, 105 S. Ct. 3375, 3380, 87 L. Ed. 2D 481 (1985).

Therefore, under established Supreme Court precedent, there are three elements to a Brady claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," i.e., prejudice must have ensued from its nondisclosure.

As demonstrated above, the 911 recording is exculpatory and is clear and convincing evidence highly favorable to Hartshorn's long maintained defense that this was a theft of an unattended vehicle and not a carjacking. This evidence is also impeachment material when compared to the sole complainant's alleged version of events in the police report, and his truthful declarations to police on the 911 recording moments after this incident occurred. The record further supports that the State had possession of this 911 recording prior to the guilty plea, but failed to provide this exculpatory 911 tape even after request was made. This evidence should have been disclosed to the defense. However, it was not. This is evidenced by the affidavit of counsel, specifically noting that he never received a copy of this 911 tape during discovery or in any subsequent proceedings. These facts are further evidenced by the Discovery Sheet signed May 25, 2007, by Assistance District Attorney Thomas Block.

A review of the 911 transcripts show that the first requirement of <u>Brady</u> is met, in that, this evidence is highly favorable to Gregory Hartshorn.  Further, a review of the Discovery Sheet and Claude Kelly's testimony confirm that this evidence was suppressed by the State. The only question left is whether Gregory Hartshorn was prejudiced by the failure of the Government to provide this exculpatory evidence.

Gregory Hartshorn was no doubt prejudiced by the non-disclosure of this 911 tape.  As noted in the excerpts of the tape above, this recording provides information that John Romano was coming out of the store when his van was already being driven off.  This was Hartshorn's defense from the beginning – that John Romano was inside the Shell Station when Hartshorn stole his vehicle and there was never any force or intimidation in the taking of the vehicle.  This evidence is highly material to Hartshorn's guilt and punishment for theft, rather than the erroneously charged carjacking.  Had the tape been provided to the defense prior to the guilty plea, it would have affected the decision of Claude Kelly on whether or not to advise his client to plead guilty.  If this case had gone to trial, the 911 tape would have provided a factual and legal defense to either of the essential elements required to prove carjacking: <u>force or intimidation</u>.  Hartshorn was convicted of a violent offense and sentenced to serve "flat time" when the evidence proves he committed a non-violent theft.  In the very least, the existence of this tape would have dramatically affected the critical stages of plea negotiations.  Further, by the State falsely contending at discovery that there was no exculpatory evidence in possession of the prosecution, Hartshorn was lulled into believing that pursuing this avenue of defense was foreclosed to him, when in fact, this was Gregory Hartshorn's only viable avenue of defense with hard evidence of Hartshorn's maintained claim of innocence to the crime of carjacking.

18

Clearly, due to the State failing to disclose this exculpatory evidence, Gregory Hartshorn was denied his Due Process Right to a fair trial. This evidence should have been provided to petitioner prior to the guilty plea – either by the State in discovery as requested, or by counsel Claude Kelly pursuant to a diligent investigation. Where the blame falls for this miscarriage of justice is truly of no moment to Gregory Hartshorn – he merely prays that this Federal Court remedy this injustice without any further delay.[3]

### The Foregoing Petition Is Timely Filed Within The One-Year Statute Of The AEDPA For Claims Based Newly Discovered Evidence Pursuant To  § 2254(b)(1) (A) (ii) and (B)
**********************************

The foregoing petition is timely filed pursuant to § 2254(b)(1) (A) (ii) and (B), which states: (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--**(A)** the claim relies on--**(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The record proves that Hartshorn filed a Pro Se' motion for discovery seeking any and all evidence to support his maintained claim that he committed theft of an unattended vehicle,

---

3  Petitioner deems it noteworthy to bring to the attention of this Federal Court that on December 12, 2014, Roger Jordan contacted the District Attorney's Office through ADA Shwanna McCarthy in an attempt at an amicable resolution concerning the withheld 911 tape in this matter. **(Exhibit 11: letter to ADA Shwanna McCarthy)** On January 22, 2014, Roger Jordan met with First Assistant Steve Wimberly. After reviewing the 911 tape and transcriptions of the tape, Mr. Wimbery ordered an investigation in this matter, giving ADA Shwanna McCarthy the objective of interviewing the sole complainant John Romano. This interview took place on February 7, 2014 at the District Attorney's Office. ADA Shwanna McCarthy played the 911 tape and further afforded John Romano a copy of both transcriptions of the tape. Upon being confronted with his declarations on the tape immediately after the theft of his unattended vehicle, John Romano informed ADA Shwanna McCarthy that it was "the police" who got the report wrong. The findings of this investigation were turned over to Chief of Trials Tim McElroy. On March 18, 2014, Roger Jordan met with Tim McElrory who stated that "although unfortunate, the District Attorney's Office is not obligated to act in this matter." Roger Jordan immediately filed for post conviction relief the same day.

not carjacking. As stated above, the failure to disclose this evidence after Hartshorn made request worked in favor of the State by lulling Hartshorn into believing that pursuing this avenue of defense was foreclosed to him, when in fact, this was Gregory Hartshorn's factual defense to the charged crime of carjacking. Until the State released the prosecution's case file to counsel Roger Jordan on September 12, 2013, the factual predicate (exculpatory 911 tape) could not have been discovered no matter how much due diligence Hartshorn put forth. Further, the fact that the withheld evidence proves without a doubt that Romano was not sitting in his vehicle, nor pulled from his vehicle as falsely alleged in the police report, the facts underlying the Sixth and Fourteenth Amendment claims is sufficient to establish that but for constitutional error, no reasonable factfinder would have found Hartshorn guilty of carjacking.

Further, to be entitled to statutory tolling Hartshorn must show that he was prevented from filing a petition by a state-created impediment in violation of the Constitution or federal law. Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir. 2003)(holding that the State's failure to provide an inmate a copy of the AEDPA so that the inmate could have timely filed his petition for habeas corpus constituted an "impediment" for purposes of tolling the statute of limitations)).

Evidence of the State created impediment is in this case is egregious. The impediment preventing Hartshorn from discovering the factual predicate of the underlying Sixth and Fourteenth Amendment Constitutional errors was created by the prosecution on May 25, 2007 by withholding the exculpatory evidence even after request was clearly made. **(Exhibit 2)** This impediment, in violation of the Constitution was not removed until September 12, 2013, the date Roger Jordan obtained a copy of the prosecution's case file. **(Exhibit 4)** This is the

same case file Hartshorn has been denied as a Pro Se' litigant several times.  The record

distinctly reveals petitioner has exercised extreme diligence in attempting to prove the

underlying Constitutional errors, but with no doubt, was prevented from doing so because of

the game of hide-and-seek with this evidence played by the prosecution.  As the record

establishes, and Hartshorn has demonstrated, he is entitled to statutory tolling concerning the

instant petition due to Claude Kelly's Constitutionally ineffective assistance and the State

created impediment of withholding exculpatory evidence which clearly prevented him from

raising the factual predicate of the Constitutional errors at anytime before now, and further

preventing him from filing a petition in violation of the Constitution and federal laws.

**Petitioner Gregory Hartshorn Is Entitled To Equitable Tolling**
**As He Was Actively Mislead By The Prosecution Which Clearly Prevented Him**
**From Asserting His Constitutional Sixth And Fourteenth Amendment Rights**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

The doctrine of equitable tolling "applies principally where the plaintiff is actively

misled by the defendant about the cause of action or is prevented in some extraordinary way

from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999).  As recently

noted by the Supreme Court, "[T]o be entitled to equitable tolling, [the petitioner] must show

'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

stood in his way' and prevented timely filing... The diligence required for equitable tolling

purposes is reasonable diligence,... not maximum feasible diligence," Holland v. Florida, 560

U.S. 631, 653, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010), and equitable tolling decisions "must

be made on a case-by-case basis." Id. at 649-50.

As the record substantiates, there is no question Gregory Hartshorn has been pursuing

21

his rights denied him with much more than "reasonable diligence," and without ever once wavering from the truth.[4]   At any rate, after (8½) years of extensive pro se' litigation – over $15,000 in attorney and private investigator fees, and what must be an astronomical amount of precious judicial economy wasted by the State's refusal to correct this injustice – the evidence counsel failed to investigate – the evidence the prosecution failed to disclose – the evidence of Gregory Hartshorn's actual innocence to carjacking and blatant denial of his Constitutional rights has unquestionably been uncovered right where it has been all along, in possession of the District Attorney's Office of Jefferson Parish.

In this case, the external factors beyond petitioner's control preventing him from asserting his Constitutional rights are two-fold.  First, Hartshorn's own trial counsel making the critical error of failing to investigate the exculpatory 911 recording clearly constitutes an eternal factor beyond Hartshorn's control.  Secondly, the State making the decision to withhold this exculpatory 911 recording after request was made no doubt constitutes an external factor beyond Hartshorn's control. Id.

In light of the fact that it is not every day that a defendant is abandoned by his counsel, coupled with the State withholding exculpatory evidence, it cannot be argued that this case clearly represent "rare and exceptional circumstances" preventing Hartshorn from asserting his Constitutional rights.  The record and evidence established, through no fault of petitioner, but through fault of Claude Kelly and the State, the one-year limitations period is subject to

---

4 **State v. Hartshorn,** 24th J.D.C. 07-2393; **State v. Hartshorn,** 25 So.3d 172, 2009 La.App. LEXIS 1920 (La.App. 5 Cir. 2009), writ denied by 38 So.3d 298, 2010 La. LEXIS 1444 (La. 2010).  **State v. Hartshorn,** No. 10-KH-681(La. 5 Cir. 10/06/10); **State v. Hartshorn,** No. 10-KH-1087 (La. 5 Cir. 2/11/11); **State ex rel. Hartshorn v. State,** 75 So.3d 915 (La. 2011)(No. 25-KH-2508); **Hartshorn v. Prince,** 2012 U.S. Dist. LEXIS 125710 (E.D. La., July 30, 2012); **State ex rel. Hartshorn v. State of Louisiana,** 2013 La. LEXIS 2146 (La., Sept. 27, 2013); **State ex. Rel. Hartshorn v. State of Louisiana,** 07-2393 (3/24/14); **State ex rel. Hartshorn v. State of Louisiana,** writ No. 14-KH-331 (La. 5 Cir. 5/20/14); **State Ex Rel. Hartshorn v. State of Louisiana,** writ No. 14-KP-1344 (La. Supreme Court 3/25/2015)

equitable tolling. <u>United States v. Patterson</u>, 211 F.3d 927, 928 (5th Cir. 2000).

### This Federal Court's Failure To Consider The Foregoing Constitutional Claims Would Result In A Fundamental Miscarriage Of Justice
**************************************************

The "fundamental miscarriage of justice" exception is confined to cases of actual innocence where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. <u>Fairman v. Anderson</u>, 188 F.3d 635, 644 (5th Cir. 1999) A petitioner claiming this exception must present new, reliable evidence and show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id.

In light of Claude Kelly's sworn affidavit testimony, combined with the newly discovered exculpatory 911 police recording capturing the sole complainant John Romano admitting that he "was coming out of the store...ran in the parking lot...grabbed the back door" of the van when petitioner was already driving away in the van, the evidence shows, as a factual matter, more likely than not, no reasonable juror would have convicted Gregory Hartshorn of carjacking.

Hartshorn must demonstrate cause for the default and actual prejudice as a result, or that failure to consider the claim would result in a fundamental miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "Cause" in this context is something external to the petitioner that cannot be fairly attributed to him. Id. at 753. The "Cause" in this case is that Hartshorn's own trial counsel, as a factual matter, failed to obtain the new, reliable evidence of the 911 police recording proving Gregory Hartshorn's innocence to carjacking.  With Hartshorn initiating discovery for his attorney, this failure of counsel cannot be attributed to the client.  In an effort not to be redundant, petitioner states that

23

the actual prejudice resulting from counsel's errors, and the State's failure to disclose this new, reliable evidence is glaring and cannot be denied.  Gregory Hartshorn was prejudiced by having his counsel and the State literally strip his fundamental rights to a trial and present hard evidence of a factual defense to the prosecutions erroneous charge of carjacking in favor of securing a conviction at any cost.

Failure of this Federal Court to consider the foregoing Constitutional claims will result in this fundamental miscarriage of justice being allowed to go uncorrected.  But for the new, reliable evidence of the 911 police recording being withheld, and trial counsel's Constitutionally ineffective assistance, "more likely than not, no reasonable juror" would have convicted Hartshorn of carjacking in light of the new evidence.

## Conclusion
**********

Gregory Hartshorn prays that this U.S. District Court will agree that the conviction is obtained in violation of the Sixth and Fourteenth Amendment rights of the Constitution and the Federal Laws of these United States and therefore must be vacated.  Gregory Hartshorn prays that this Court will further grant any and all relief this Court deems petitioner is entitled to by law, including, but not limited to an evidentiary hearing without delay.

Respectfully Submitted,

Gregory Lee Hartshorn, Pro Se' # 250861

24

### Certificate Of Service
**********************

I, Gregory Hartshorn certify that a true copy of the foregoing application pursuant to 28 U.S.C. § 2254 and exhibits has been deposited in the U.S. Mail addressed to this Court on the 1st day of June, 2015.  I further certify that I have served the district attorney's office of Jefferson Parish by way of same.

Gregory Lee Hartshorn, #250861 Pro Se'

### Declaration Against Perjury
*************************

I, Gregory Hartshorn do declare pursuant to 28 U.S.C. § 1746 and before God that the statements and claims within are completely true.

Gregory Lee Hartshorn, #250861 Pro Se'

25

**Exhibit 1:**

**March 17, 2014, Affidavit Of Federal Defender Claude Kelly**

<u>AFFIDAVIT</u>

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public in and for the State of Louisiana, Parish of Orleans, personally came and appeared:

**Claude Kelly**

A person of the full age of majority, who being duly sworn, did depose and state as follows:

1. He is an attorney licensed in the State of Louisiana;
2. He was appointed by the trial court to represent Gregory Hartshorn for the charge of car jacking in case number 07-2393, Division F;
3. He received discovery from the District Attorney's Office in the above case on May 25, 2007;
4. Neither a copy of the 911 tape, nor any reference to its existence, was provided in this discovery or in any subsequent proceedings during this representation;
5. At no time did he request a copy of the 911 tape, nor did he seek a subpoena duces tecum for this 911 tape;
6. During this representation Gregory Hartshorn maintained that this crime was a theft and not a car jacking;
7. Based upon advise of counsel, and without any other evidence to support this defense, Gregory Hartshorn pled guilty as charged to car jacking and to a Multiple Offender Bill of Information, and received a sentence of ten years;
8. He has since listened to the 911 tape, and read the transcripts of the 911 tape, and finds that it contains exculpatory evidence that supports the defense that this crime was a theft and not a car jacking;
9. Had the 911 tape been available at the time of the plea he would not have advised his client to plead guilty as charged to the car jacking and the Multiple Offender Bill of Information.

*Claude J. Kelly*

**Claude Kelly**

Sworn to and subscribed

before me this _17TH_

day of March, 2014,

*[signature]*

NOTARY PUBLIC
ROGER W. JORDAN, JR.
#19642

**Exhibit 2:**

**Pro Se' Discovery Motion**

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON 

STATE OF LOUISIANA

CASE # 07-2393

DIVISION " F "

STATE OF LOUISIANA

-VERSUS-

GREGORY HARTSHORN

DEPUTY CLERK

FILED: _____
MONTH / DAY / YEAR

*:* *:* *:* *:* *:* *:* *:* *:* *:* *:* *:*

### Defendant's Motion For Discovery

COMES NOW the defendant who requests discovery and inspection, from the
Criminal District Court in and for the State of Louisiana, to-wit:
La. Code of Criminal Procedure, Articles;

1.

#### Article - 716 - - Statements By The Defendant.

Any relevant written or recorded confession or statement of any nature,
including recorded testimony before a grand jury, or copy thereof, of the def-
endant in the possession, custody, or knowledge of the district attorney, and
any oral confession or statement of any nature, made by the defendant, which
the district attorney intends to offer in evidence at the trial, with the inf-
ormation as to when, where and to whom such oral confession or statement was
made.

2.

#### Article - 717 - - Defendant's Prior Criminal Record.

Any records of the defendant's criminal record arrests and convictions
in the State's possession or custody.

3.

#### Article - 718 - - Documents and Tangible Objects.

The defendant to inspect, copy, examine, test scientifically, photograph
or otherwise reproduce books, papers, documents, photographs, tangible objects,
buildings, places, or copies or portions thereof, which are in the possession,
custody, or control of the State, and which:

1.) are favorable to the defendant and which are material and relevant to the
issue of guilt or punishment, or

2.) are intended for use by the State as evidence at the trial, or

3.) were obtained from or belong to the defendant.

IMAGED JUN 13 '07

4.

Article - 719 - - Reports of Examinations and Tests.

To inspect and copy, photograph, or any results or reports, or copies
thereof, of physical or mental examination, and of scientific tests or exp-
eriments, made in connection or material to the particular case, that are in
the possession, custody, control or knowledge of the State, and intended for
use at trial.

5.

Article - 720 - - Evidence of Other Crimes.

Any evidence which the State intands to offer of the commission of any
other crimes admissible under the authority of La. R.S. 15:445 or R.S. 15:446.

6.

Article - 721 - - Hearsay Statements of Coconspirators.

Any hearsay statements of coconspirators pursuant to La. R.S. 15:455.

7.

Article - 722 - - Confessions and Inculpatory Statements of Codefendants.

Any relevant written or recorded confessions or inculpatory statements
made by a codefendant and intended for use at trial.  And, exculpatory evi-
dence shall be produced under this Article even though it is not intended
for use at trial.

8.

Article - 723 - - State Reports and Other Subject Matter Not Subject to
Disclosure

Respectfully Submitted

X _Gregory Hartshorn_

Pro-Se
Jefferson Correctional Center
P.O.Box 388 - Pod 3CL-2A
100 Delhonde, Street.
Gretna, Louisiana.

70053

* *  * *  * *  * *  * *  * *  * *  * *  * *  * *  * *  * *  * *  * *  *

CERTIFICATE OF SERVICE

I, _Greg Hartshorn_ do hereby certify that I have sent a
true and correct copy of this foregoing Motion For Discovery to the Clerk of
Court for the 24th Judicial District Court in the Parish of Jefferson, State
of Louisiana, on this 19TH day of APRIL ,2007 .

IMAGED JUN 7 07

X _Greg Hartshorn_

-2-

**Exhibit 3:**

**Police Report**

 

ARCHIVE     Printed by: VINSON_SD    05/03/2007 03:16     Page   4    of   4

NARRATIVE

Time Stamp: 03/01/2007 22:46        Written By: DANIELLE RODRIGUEZ

ON WEDNESDAY, FEBRUARY 28TH, 2007 AT APPROXIMATELY 0519 HRS, THE OFFICER WAS DISPATCHED TO AREA OF LAFAYETTE ST AND 19TH ST IN GRETNA IN REFERENCE TO A WHITE VAN THAT WAS JUST STOLEN FROM THE PARKING LOT OF 1400 LAFAYETTE ST, GR BY AN UNKNOWN W/M.

GRETNA HEADQUARTERS ADVISED THEY RECEIVED A CALL FROM THE CASHIER AT THE RACETRAC (1625 LAFAYETTE ST, GR) ADVISING THE WHITE VAN WAS LAST SEEN TRAVELLING DOWN 19TH ST. AS THE OFFICER PROCEEDED TO THE LOCATION, THE OFFICER OBSERVED A WHITE VAN LIC PLATE: OVD321 DRIVEN BY A W/M ON LAFAYETTE ST BY WESTBANK EXP HEADED N/B STOPPED AT THE RED LIGHT IN THE TURNING LANE. THE OFFICER INITIATED A TRAFFIC STOP AS THE VEHICLE BEGAN TO TURN WESTBOUND ON THE WESTBANK EXPRESSWAY WITH THE VEHICLE MAKING A SUDDEN STOP AT THE BASE OF THE LAFAYETTE ON RAMP TO THE ELEVATED EXPRESSWAY. THE W/M DRIVER, RED PLAID SHIRT, WHITE SHIRT UNDERNEATH, BLUE JEANS, BLONDE HAIR, IMMEDIATELY EXITED THE VEHICLE AND BEGAN TO FLEE ON FOOT SOUTHBOUND UNDERNEATH THE EXPRESSWAY. THE OFFICER PURSUED THE SUBJECT TEMPORARILY LOSING SIGHT OF HIM AS HE CROSSED THE E/B SIDE OF THE EXPRESSWAY, ENTERING A RESIDENCE YARD. ASSISTING OFFICERS IMMEDIATELY SET UP A PERIMETER AND WERE ABLE TO LOCATE THE SUBJECT HIDING IN DENSE SHRUBBERY WHERE HE WAS LAST SEEN.

THE SUBJECT WAS PLACED UNDER ARREST, ADVISED OF HIS RIGHTS, AND PLACED IN THE REAR OF THE OFFICER'S UNIT. THE OFFICER THEN SPOKE WITH THE VICTIM, JOHN ROMANO, W/M, 3-20-49, WHO STATED HE WAS SITTING IN HIS VEHICLE WITH THE MOTOR RUNNING AND THE DRIVER'S SIDE DOOR OPEN IN THE PARKING LOT OF 1400 LAFAYETTE ST, GR (SHELL STATION) WHEN AN UNKNOWN W/M PULLED HIM FROM THE VEHICLE AND FLED IN THE VEHICLE. ROMANO FURTHER STATED THAT WHILE ATTEMPTING TO REGAIN CONTROL OF THE VEHICLE, DESILVA CONTINUED TO DRIVE DRAGGING ROMANO ALONG SIDE OF THE VEHICLE WITH ROMANO FALLING TO THE GROUND RECEIVING AN ABRASION TO HIS RIGHT ELBOW. DIGITAL PHOTOGRAPHS WERE TAKEN OF THE INJURIES SUSTAINED BY THE VICTIM. ROMANO POSITIVELY IDENTIFIED THE W/M THAT WAS APPREHENDED AS THE SUBJECT THAT TOOK THE VEHICLE FROM HIM IN THE PARKING LOT. ROMANO'S VAN WAS RETURNED TO HIM IN GOOD CONDITION.

THE SUBJECT, WHO IDENTIFIED HIMSELF AS ROY DESILVA, W/M, 9-21-68 WAS THEN TRANSPORTED TO 200 5TH ST, GRETNA. ONCE AT 200 5TH ST, GRETNA THE OFFICER WAS UNABLE TO LOCATE A CRIMINAL HISTORY FOR DESILVA, BUT DESILVA ADMITTED TO HAVING A LOCAL ARREST RECORD. AFTER FREQUENT ATTEMPTS TO OBTAIN A CORRECT NAME FOR DESILVA, HE WAS TRANSPORTED TO JPCC FOR BOOKING WHERE HE WAS CHARGED WITH RS 14:64.2 (CARJACKING). THE OFFICER NOTES THAT BEFORE TRANSPORT, THE OFFICER OBSERVED A TATTOO ON THE LEFT SIDE OF THE SUBJECT'S NECK "LIL GREG", WHICH DESILVA STATED WAS HIS SON'S NAME, THAT LATER ENABLED THE OFFICER TO FIND HIS TRUE IDENTITY.

ON MARCH 1ST, 2007 AT APPROXIMATELY 1900 HRS, THE OFFICER WAS ABLE TO LOCATE DESILVA'S TRUE IDENTITY BY RUNNING AN ADDRESS CHECK ON 708 ESTALOTE ST, HARVEY, THE ADDRESS GIVEN BY DESILVA FOR HIS RESIDENCE, IN THE ARMMS DATABASE. THE OFFICER LOCATED A GREGORY HARTSHORN, W/M, 5-3-70 WITH THE SAME PHYSICAL DESCRIPTION AS DESILVA. UPON RUNNING HIS DRIVER'S LICENSE NUMBER FOR A PHOTOGRAPH, THE OFFICER WAS ABLE TO POSITIVELY IDENTIFY ROY DESILVA'S AS BEING GREGORY HARTSHORN. ONCE AT THE JPCC, THE OFFICER WAS ALSO ABLE TO PROVE THIS WITH THE PHOTOGRAPH THAT ACCOMPANIED WITH HARTSHORN'S ARMMS RAP SHEET.

THE OFFICER COLLECTED COPIES OF THE JPCC CLASSIFICATION SCREENING FORM AND RECEIPT FOR INMATE PROPERTY RECEIVED BOTH OF WHICH WERE SIGNED BY HARTSHORN AS "ROY DESILVA". BOTH ITEMS WERE LATER LOGGED UNDER A CHAIN OF CUSTODY FORM. THE OFFICER THEN COMPLETED AN ARREST REPORT FOR GREGORY HARTSHORN, W/M, 5-3-70, TO BE CHARGED WITH RS 14:132 INJURING PUBLIC RECORDS).

NO FURTHER AT THIS TIME.

**Exhibit 4:**

**Public Record Review and Payment Receipt**

# PUBLIC RECORDS REVIEW

DATE: _9 - 11 - 13_

The record listed below was reviewed this date by _Tom Harrington_

State of Louisiana versus _Gregory Hartshorn_

Docket No. _07 - 2393_ DA No. _07 - 1517_ Division: "_F_"

Receipt for payment in the amount of    $ _77_ for _77_ copies

                                $ _____ for _____ video tape(s)

                                  $ _25._ for _25_ CD - 911 ~~cassette tape(s)~~

                                  $ _____ for _____ color copies

              TOTAL    $ _102._

was received in the above captioned case. Payment made by _____

_Tom Harrington by Mary Donsereaux_
Representative for Defendant (signature)

_Mary Donsereaux_
Representative for Defendant (print)

Representative for District Attorney's Office

**Exhibit 5:**

**Discovery Sheet Signed May 25, 2007**

# DISCOVERY

Date _5-8-07_

Defendant _Gregory L Harrisheris_

Da# _07-1517_          Clerk# _02-2878_

This is to acknowledge the receipt of discovery on the above named defendant.

Bill of Information
Arrest Register/Arrest Report
Police Report
Rap Sheet/Rap Photo
Appearance Bond
Supplemental Reports
Criminal History Report/Motion/Arrests
Probable Cause
Statements
Crime Lab Reports
Application for Search Warrant
Search Warrant/Return/Return of Warrant
Certified Convictions
Photos
Other

In exchange for open file Discovery, defendant agrees to waive Preliminary Examination and Bill of Particulars. Please sign and return back to Division/file. Thank You, " _F_ " Secretary

_Attorney for Defense_

_5/15/57_
Date

**Exhibit 6:**

**Alliance Court Reporter Transcript Of 911 Recording**

1

*ORIGINAL*

2          STATE OF LOUISIANA

3          PARISH OF JEFFERSON

4       GRETNA POLICE DEPARTMENT

5

6

7

8       TRANSCRIPTION FROM RECORDED

9       911 POLICE DISPATCH CALL OF

10          FEBRUARY 28, 2007

11

12

13

14

15

16

17

18

19

20

21

22   TRANSCRIBED BY:

23   MarLane Gaille, CCR-RPR

24

25

```
 1              911 CALL OF FEBRUARY 28, 2007
 2        911 OPERATOR:
 3              911, Gretna police.  Can I help
 4    you?
 5        CASHIER KAREN:
 6              Yeah.  This is Cashier Karen at
 7    the Racetrack --
 8        911 OPERATOR:
 9              Yeah, Karen.
10        CASHIER KAREN:
11              -- on Lafayette Street.
12        911 OPERATOR:
13              Uh-huh.
14        CASHIER KAREN:
15              Our Times-Picayune salesman is
16    here.  Someone just stole his van over here.
17        911 OPERATOR:
18              Okay.  What color van, ma'am?
19        CASHIER KAREN:
20              It's a white van --
21        JOHN ROMANO (in background):
22              White Ford F-250.
23        911 OPERATOR:
24              They took it off?  Which -- what
25    direction?
```

```
 1        JOHN ROMANO (in background):
 2            19th Street.
 3     911 OPERATOR:
 4            Karen, what direction did he --
 5     CASHIER KAREN:
 6            He turned on 19th Street.
 7     911 OPERATOR:
 8            Units, a 67A just occurred at the
 9  Racetrack.  It's going to be a
10  Times-Picayune van, white in color.  It fled
11  to 19th Street.
12            (to Cashier Karen) Did they have a
13  "Times-Picayune" or anything on it?
14     CASHIER KAREN:
15            (to John Romano) You didn't have
16  anything on it?  "Times" or anything, did
17  you?
18     JOHN ROMANO (in background):
19            No.  Just tell her that it needs a
20  wash job.
21     CASHIER KAREN:
22            It just needs a wash job.  It's
23  a --
24     911 OPERATOR:
25            (to units) It had nothing
```

1   written --

2        CASHIER KAREN:

3             -- F-250.

4        911 OPERATOR:

5             (to units) The vehicle had nothing

6   written on it, but it was dirty.  A dirty

7   white van.

8        CASHIER KAREN:

9             A white van, and it's probably

10  loaded with papers.

11       JOHN ROMANO (in background):

12             Yep.

13       911 OPERATOR:

14             (to units) Loaded with papers.

15  Fled to 19th street from Lafayette.

16       JOHN ROMANO (in background):

17             -- that's where he jumped in my

18  truck.

19       POLICE UNIT (on radio):

20             All right.  I'm in the next block.

21  I'm going to come up Claire.

22       CASHIER KAREN:

23             (to John Romano) You want to sit

24  down?  Sit down for a minute.

25       911 OPERATOR:

1                    Okay.

2            JOHN ROMANO (in background):

3                    I got out the van and got in the

4    back of the truck --

5            911 OPERATOR:

6                    Do you know if they took a left on

7    Lafayette, ma'am?  On 19th Street?

8            CASHIER KAREN:

9                    Yes.

10           POLICE UNIT (on radio):

11                   What are they saying?

12           911 OPERATOR:

13                   (to units) They said they took a

14    left on Lafayette.

15           CASHIER KAREN:

16                   I'm sorry.  A right onto --

17           911 OPERATOR:

18                   (to units) Correction.  A right.

19           CASHIER KAREN:

20                   A right onto 19th.

21           911 OPERATOR:

22                   (to units) A right onto 19th

23    Street.

24           CASHIER KAREN:

25                   Yes, ma'am.

```
 1              (to John Romano) Sit down a few
 2   minutes.
 3        911 OPERATOR:
 4              Yeah.  Tell him to sit down.
 5        CASHIER KAREN:
 6              (to John Romano) You had just got
 7   out --
 8        911 OPERATOR:
 9              Was he white or black?  Did he see
10   anything?  Who took it?
11        CASHIER KAREN:
12              (to John Romano) Do you know if it
13   was a white man or a black man?
14        JOHN ROMANO (in background):
15              A white guy.  He was on the pay
16   phone.
17        CASHIER KAREN:
18              A white guy.  He was on the phone.
19        911 OPERATOR:
20              (to units) It's going to be a
21   white male who took it.
22        POLICE UNIT (on radio):
23              Is it a full-sized white van?
24        911 OPERATOR:
25              Is it a full-sized white van?
```

1       CASHIER KAREN:

2              Yes, ma'am.

3       911 OPERATOR:

4              (to units) 10-4.

5       CASHIER KAREN:

6              (to John Romano) It's a cargo

7    style, isn't it?

8       JOHN ROMANO (in background):

9              Yeah.

10       CASHIER KAREN:

11              Cargo style.

12       POLICE UNIT (on radio):

13              Okay.  We're going to try and make

14    this easy.  I guess one of us is going to

15    need to get on the express --

16       911 OPERATOR:

17              Okay.

18       POLICE UNIT (on radio):

19              If he goes up into Jonestown,

20    there's only a couple ways out.  We're going

21    to try to be smart about it.

22       911 OPERATOR:

23              (to units) They say it's going to

24    be like a cargo van, loaded with newspapers.

25       CASHIER KAREN:

1          Yeah.  It's got windows all across

2    the side.

3        JOHN ROMANO (in background):

4          The right side.

5        CASHIER KAREN:

6          The right side's got all windows.

7        JOHN ROMANO (in background):

8          Tell her it's a cargo van.  Not a

9    passenger van.

10        CASHIER KAREN:

11          Yeah.

12        POLICE UNIT (on radio):

13          Just go ahead and get on that one,

14    if you want, Danielle.  I don't see any

15    markings on it either.

16        911 OPERATOR:

17          (to units) It's going to have

18    windows all around it.

19          Go ahead, ma'am.

20        OFFICER DANIELLE RODRIGUEZ (on radio):

21          "Ocean, Victor, David" --

22        POLICE UNIT (on radio):

23          I mean, whatever.  It's a cargo

24    van.

25        911 OPERATOR:

1           He doesn't know his license, by
2  chance?
3      CASHIER KAREN:
4           I'm sorry?
5      911 OPERATOR:
6           Does he have his license plate?
7  Does he know it by hand -- by chance?
8      CASHIER KAREN:
9           (to John Romano) Do you know your
10 license plate offhand?
11     JOHN ROMANO (in background):
12          I don't have it on me.
13     POLICE UNIT (on radio):
14          I don't know.  No.
15     JOHN ROMANO (in background):
16          It's written down on my
17 registration --
18     POLICE UNIT (on radio):
19          They've got windows all on the
20 other side.
21     911 OPERATOR:
22          Oh --
23     JOHN ROMANO (in background):
24          -- "John Romano."
25     911 OPERATOR:

```
 1              He can't remember the numbers on
 2    the plate or anything?
 3         CASHIER KAREN:
 4              No.  You -- he said he could give
 5    you his name and address, and it should be
 6    on the registration.
 7         JOHN ROMANO (in background):
 8              Right.
 9         911 OPERATOR:
10              Okay.  Well, we'll get that in a
11    second.  We're just --
12         POLICE UNIT (on radio):
13              Light him up, Danielle, and see
14    what happens.  There's newspapers all over
15    the place.
16         OFFICER DANIELLE RODRIGUEZ (on radio):
17              He's running.  He's running.
18         CASHIER KAREN:
19              From what I'm hearing, they got
20    him surrounded in that area.
21         OFFICER DANIELLE RODRIGUEZ (on radio):
22              White male, black shirt -- black
23    shirt -- running -- running towards Claire.
24         911 OPERATOR:
25              Stay on the phone, ma'am.
```

```
 1        CASHIER KAREN:

 2             I'm sorry?

 3        911 OPERATOR:

 4             "Black shirt" --

 5        POLICE UNIT (on radio):

 6             Where's she at?

 7             She's on the Expressway on the

 8   north side.  I can see her unit.  I can't

 9   get to her yet.

10        911 OPERATOR:

11             (to units) I thought you said ran

12   towards Claire, huh?

13        CASHIER KAREN:

14             You were --

15             Hello?

16        911 OPERATOR:

17             Wait.  Hold on, ma'am.

18        CASHIER KAREN:

19             (to John Romano) You were in the

20   back, taking papers out when he jumped in

21   the front?

22        JOHN ROMANO (in background):

23             I was coming out the store --

24        POLICE UNIT (on radio):

25             She rode on the Expressway.
```

1          OFFICER DANIELLE RODRIGUEZ (on radio):

2              He ran across the Expressway right

3    now.

4          JOHN ROMANO (in background):

5              -- and he pulled me down the

6    street, and I fell.

7          911 OPERATOR:

8              Okay, Karen.  I'm going to let you

9    go, baby.  We're going to try to get it.

10   Okay?

11        CASHIER KAREN:

12            All right.  Thank you.

13

14                  END OF CALL

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4         I, the undersigned reporter, do

5    hereby certify that the above and foregoing

6    is a true and correct transcription of an

7    incoming 911 call that had been previously

8    recorded onto CD and thereafter transcribed

9    by me into written form using the stenotype

10   method to the best of my ability and

11   understanding this 28th day of November

12   2013.

13

14

15

16

17

18

19          MarLane Gaille, CCR-RPR

20

21

22

23

24

25

**Exhibit 7:**

**Atlantis Recording Studio Transcript Of 911 Recording**

TRANSCRIPTION FROM RECORDED
911 POLICE DISPATCH CALL OF FEBRUARY 28, 2007
IN RELATION TO GREGORY LEE HARTSHORN
PARISH OF JEFFERSON, STATE OF LOUISIANA

911 OPERATOR @ 00:01-00:02 "911, Gretna Police, can I help you?"

CASHIER KAREN TO 911@ 00:02-00:06: "This is Cashier Karen at the Racetrack on Lafayette Street."

911 TO CASHIER KAREN @ 00:04-00:05: Hello Karen."

CASHIER KAREN TO 911@ 00:06-00:11: "Our Time Picayune salesman is here, someone just stole his van over here."

911 OPERATOR @ 00:12-00-13: "Ok, what color van Ma'am?"

CASHIER KAREN TO 911@ 00:13-00:14: "It's a white van..."

JOHN ROMANO CASHIER KAREN @00:14-00:16: "White Ford F-250."

911 TO CASHER KAREN @ 00:15-00:17: "Just took off, which direction?"

JOHN ROMANO TO CASHER KAREN @ 00:18 "... 19th Street."

911 TO CASHIER KAREN @ 00: 19-00:20: "Karen. What direction did he ...."

CASHER KAREN TO 911 @ 00:20-00:21: He turned on 19th Street."

911 TO UNITS @ 00:22-00:29: "Units, a 67A just occurred at the Racetrack. It's going to be a Times Picayune van white in color. It fled to 19th Street."

911 TO CASHIER KAREN @ 00:30-00:32: Did it have Times Picayune or anything on it?

CASHIER KAREN TO JOHN ROMANO @ 00:32-00:34: "You didn't have anything on it, Times or anything on it did you?"

JOHN ROMANO TO CASHIER KAREN @ 00:34-00:36: "No Just tell her it needs a wash job."

CASHIER KAREN TO 911 @ 00:36-00:38: "it just needs a wash job."

911 TO CASHIER KAREN @ 00:38: " It had nothing written...."

CASHIER KAREN TO 911 @ 00:39: F-250."

911 TO UNITS @ 00:40-00:43:"The vehicle had nothing written on it but it was dirty. A dirty white van.

CASHIER KAREN TO 911 @ 00:46-00:47: "... and its probably loaded with papers."

JOHN ROMANO TO CASHIER KAREN @ 00:48: "Yep"

911 TO UNITS @ 00:49-00:51: "Loaded with papers and fled to 19th street from Lafayette."

JOHN ROMANO TO CASHIER KAREN @ 00:51-00:53: "... and that's when he jumped in my truck."

UNIT @ 00:54-00:57: "Alright. I'm in the next block. I'm going to come up Claire."

CASHIER KAREN TO ROMANO @ 00:58-00:59: " You want to sit down? Sit down for a minute."

JOHN ROMANO TO CASHIER KAREN @ 01:05-01:07: "i got out the van and got in the back the truck..."

911 TO CASHIER KAREN @ 01:09-01:12: "Do you know if they took a left on Lafayette ma'am, on 19th Street?'

CASHIER KAREN @ 01:13: "Yes."

911 TO UNITS @ 01:14-01:16: "they said they took a left on Lafayette Street."

CASHIER KAREN TO 911 @ 01:16-01:17: " I'm sorry. A right on..."

911 TO UNITS @ 01:17-01:18: "Correction. A right..."

CASHIER KAREN TO 911 @ 01:19: "Right on to 19th."

911 TO CASHIER KAREN @ 01:20-01:21: "A right on to 19th."

CASHIER KAREN @ 01:22: "Yes ma'am."

CASHIER KAREN TO JOHN ROMANO @ 01:34-01:36: "You had just got out ..."

911 TO CASHIER KAREN @ 01:36-01:38: "Was he white or black? Did he see anything who took it?"

CASHEIR KAREN TO ROMANO @ 01:38-01:39: "Do you know if it was a white man or a black man?"

JOHN ROMANO TO CASHIER KAREN @ 01:39-01:40: "A white guy.. on the pay phone."

911 TO UNITS @ 01:42-01:43: "It's going to be a white male who took it."

UNIT @ 01:54-01:55: "Is it a full size white van?"

911 TO CASHIER KAREN @ 01:57-01:58: "Is it a full size white van?"

CASHIER KAREN AND JOHN ROMANO TO 911 @ 01:58-02:01: "Yes ma'am it's a cargo style isn't it?"

JOHN ROMANO @ 02:01: "Yes."

911 TI UNITS @ 02:00: "10-4"

CASHIER KAREN TO 911 @ 02:02: "Cargo style."

UNIT @ 02:02-02:17: "Ok. Were going to try and make this easy. I guess one of us is going to need to get on the Express. If he goes up into Jonestown there's only a couple of ways out. Were going to try to be smart about it."

911 TO UNITS @ 02:19-02:22: "They say it's going to be like a cargo van. Loaded with newspapers."

CASHIER KAREN TO 911 @ 02:23-02:25: "Yea, it's got windows all across the side."

JOHN ROMANO @ 02:26: "The right side."

CASHIER KAREN TO 911 @ 02:28-02:29: "The right sides got all windows."

JOHN ROMANO TO CASHIER KAREN @ 02:30-02:32: "Tell her it's a cargo van. Not a passenger van."

CASHIER KAREN @ 02:33: "Yea."

UNITS @ 02:37-02:42: (Inaudible)

911 TO UNITS @ 02:44-02:46: "ts going to have windows all around it."

911 TO CASHIER KAREN @ 02:46-02:47: "Go ahead, ma'am"

OFFICER DANIELLE RODRIGUEZ @ 02:48-0250: "Ocean, Victor, David..."

UNIT @ 02:52-02:54: "It's a cargo van?"

911 TO CASHIER KAREN @ 0257-02:59: "He doesn't know his license by chance?"

CASHIER KAREN TO 911 @ 03:00: "I'm sorry?"

911 TO CASHIER KAREN @ 03:00-03:02: "Does he have his license plate? Does he know it by chance?"

CASHIER KAREN TO ROMANO @ 03:03-03:04: "I don't have it on me."

UNITS @ 03:05-03:08: (Inaudible)

JOHN ROMANO TO CASHIER KAREN @ 03:06-03:11" it's written down om my registration... John Romano."

911 TO CASHIER KAREN @ 03:12-:03:14: "He can't remember the numbers on the plate or anything?"

CASHIER KAREN TO 911 @ 03:15-03:20: "No. you could put his name and address in. it should be on his registration."

JOHN ROMANO @ 03:21: "Right."

911 TO CASHIER KAREN @ 03:21-03:22: "Ok. We'll get that in a second."

UNIT TO OFFICER RODRIGUEZ @ 03:22-03:25: "light him up Danielle and see what happens. There's newspapers all over the place."

OFFICER RODRIGUEZ TO UNITS @ 03:27-03:28: "He's running, He's running."

CASHIER KAREN TO ROMANO @ 03:30-03:33: "From what I'm hearing they got him surrounded in that area."

OFFICER RODRIGUEZ @ 03:33-03:38: "white male, Black shirt. Running towards Claire."

UNIT @ 03:47-03:48: "Wheres she at?"

UNIT @ 03:50-03:55: "She's on the Express on the Northside. I can see her unit. I can't get to it yet."

911 TO UNITS @ 03:56-03:58: "I thought you said he ran towards Claire?"

CASHIER KAREN TO ROMANO @ 03:59 THEN TO 911: "you were... hello?"

911 TO CASHIER KAREN @ 04:00-04:01: "Wait, hold on ma'am."

CASHIER KAREN TO JOHN ROMANO @ 04:01-04:04: "You were in the back taking papers out when he jumped in the front?"

JOHN ROMANO TO CASHIER KAREN @ 04:04-04:11: " I was coming out the store and ran in the parking lot and grabbed the back door and was hanging on when he pulled me to the street and that's how I fell."

911 TO CASHIER KAREN @ 04:11-04:14:13: "Ok Karen. I'm going to let you go baby. Were going to try to get it back ok."

CASHIER KAREN TO 911 @ 04:14: "Alright. Thank you."

END OF CALL @ 04:16

**Exhibit 8:**

**Trial Court Denial**

TWENTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

NO. 07-2393                                              DIVISION " F "

STATE OF LOUISIANA

VERSUS

GREGORY HARTSHORN

FILED: 3\24\2014                                    _____
                                                    DEPUTY CLERK

### ORDER

This matter comes before the court on petitioner's **APPLICATION FOR POST-CONVICTION RELIEF, STAMPED AS FILED MARCH 18, 2014.**

On September 17, 2007, with the assistance of counsel, the petitioner pled guilty to LSA-R.S. 14:64.2, relative to carjacking. He also pled guilty to the multiple bill. As negotiated, the court sentenced him as a multiple offender to 10 years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence.

The petitioner previously filed an application, pro se, for post-conviction relief on November 21, 2008, alleging ineffective assistance of counsel in that counsel failed to properly investigate, and that counsel failed to file an appeal. On December 4, 2008, the court construed his application for post-conviction relief as a request for an out-of-time appeal, granted an appeal, and dismissed his application for post-conviction relief without prejudice. The Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence. *State v. Hartshorn*, 09-KA-47 (La. App. 5 Cir. 11/10/09); 25 So.3d 172; *writ denied*, 2009-KO-2654 (La. 6/4/10); 38 So.3d 298.

Petitioner filed another application for post-conviction relief, which this court denied on July 12, 2010. The Fifth Circuit Court of Appeal remanded the application for review on the merits. *State v. Hartshorn*, 10-KH-681 (La. App. 5 Cir. 10/6/2010). The court denied the application on November 29, 2010, and denied petitioner's supplemental memorandum on January 19, 2011.

Petitioner also filed another application for post-conviction relief, and argued that the newly discovered evidence consisting of an interview of the victim renders the guilty plea constitutionally infirm. The State filed its response, claiming that the application is procedurally barred as untimely, repetitive, and successive. Defense attorney Overton Harrington, Jr., filed a supplement to the application, including an affidavit of defense counsel attesting to a conversation with the victim in this case. The court denied this application on January 7, 2013. Petitioner sought writs, which the Fifth Circuit Court of Appeal denied. *State ex rel Hartshorn v. Louisiana*, 13-KH-87 (La. App. 5 Cir. 3/21/13).

Petitioner filed another application for post-conviction relief and claims that his application is timely in light of the recent United States Supreme Court case, *Martinez v. Ryan*, 132 S.Ct. 1309 (3/20/12). The court denied this petition on April 17, 2013.

Petitioner, through counsel, now files this fifth application for post-conviction relief. He claims (similar to his first and second applications) that counsel was ineffective for failure to investigate his defenses, specifically that counsel failed to request a copy of the 911 tape, and that the tape would have shown that the offense was theft and not carjacking.

A plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea. *State v. Crosby*, 338 So.2d 584, 586 (La.1976). It is well settled that a validly entered guilty plea waives any right a defendant might have had to question the merits of the State's case and the factual basis underlying the conviction. *State v. Lemon*, 923 So.2d 794, (La.App. 5 Cir. 2/14/06). (citing *State v. Bourgeois*, 406 So.2d 550, 552 (La.1981); *State v. Lewis*, 01-490 (La.App. 5 Cir.10/30/01), 800 So.2d 1032, 1035.)

Furthermore, the court finds petitioner's application for post-conviction relief untimely. Under the clear language of LSA-C.Cr.P. art. 930.8, the petitioner had two (2) years from the date his conviction and sentence became final to file an application for post-conviction relief, unless he proved an exception to the time limitations of LSA-C.Cr.P. art. 930.8 (A). Though petitioner claims newly discovered evidence, petitioner fails to indicate why he delayed in

seeking disclosure of the 911 tapes, as the tapes were discoverable and available prior to petitioner pleading guilty, and within the 2 years after conviction and finality of judgment. Under LSA-C.Cr.P. art. 926(B)(5), and application for post-conviction relief shall allege all errors known and discoverable by the exercise of due diligence. Petitioner fails to provide or prove any sufficient exceptions for delayed filing apply to his case. Thus, his application for post-conviction relief is procedurally barred.

Additionally, the court finds petitioner's fifth application repetitive and successive. Post-conviction procedures are strictly enforced. LSA-C.Cr.P. art. 930.4 provides that a successive application may be dismissed if it fails to raise a new claim. Specifically, if the application alleges a claim which the prisoner had knowledge of but failed to raise in the proceedings prior to the conviction, the court may deny relief. LSA-C.Cr.P. art. 930.4(B). Similarly, if the application raises a claim raised at trial but not on appeal, relief may be denied. LSA-C.Cr.P. art. 930.4(C). A successive application may be dismissed if it raises a new or different claim. LSA-C.Cr.P. art. 930.4(D). Finally, a successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application. LSA-C.Cr.P. art. 930.4(E). *State v. Gaines*, 701 So.2d 688, (La.App.4.Cir. 1997), explicitly holds that a petitioner is procedurally barred from raising a claim on post-conviction relief if he could have done so on appeal or in prior applications.

Accordingly,
**IT IS ORDERED BY THE COURT** that the petitioner's application for post-conviction relief be and is hereby **DENIED**.

Gretna, Louisiana this ___24___ day of _March_, 20_14_.

_____
**JUDGE**

**PLEASE SERVE:**
DEFENDANT: Gregory Hartshorn, DOC # 250861, Hunt Correctional Center, P.O. Box 174, St. Gabriel, LA 70776

Defense Counsel:  Roger Jordan, 706 Derbigny Street, Gretna, LA 70053

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA

**Exhibit 9:**

**Louisiana Fifth Circuit Denial**

# *Application For Writs*

## No. **14-KH-331**

## COURT OF APPEAL, FIFTH CIRCUIT

## STATE OF LOUISIANA

**MAY 02, 2014**

*Susan Buchholz*

Deputy Clerk

STATE OF LOUISIANA
VERSUS
GREGORY HARTSHORN

IN RE  GREGORY HARTSHORN

APPLYING FOR  SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE MICHAEL P. MENTZ, DIVISION "F", NUMBER 07-2393

**Attorneys for Relator:**

James A. Williams
Roger W. Jordan, Jr.
Attorneys at Law
706 Derbigny Street
Gretna, LA 70053
(504) 361-0636

**WRIT DENIED**

(See Attached)

**Attorneys for Respondent:**

Terry M. Boudreaux
Assistant District Attorney
200 Derbigny Street
Gretna, LA 70053
(504) 368-1020

Gretna, Louisiana, this _27th_ day of May, 2014.

STATE OF LOUISIANA

VERSUS

GREGORY HARTSHORN

NO. 14-KH-331

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**WRIT DENIED**

In this writ application, relator seeks review of the district court's March 24, 2014 denial of relator's application for post-conviction relief filed on March 18, 2014. For the following reasons, this writ application is hereby denied.

On April 18, 2007, the Jefferson Parish District Attorney filed a bill of information charging relator, Gregory L. Hartshorn (a/k/a Roy Desilva), with carjacking in violation of La. R.S. 14:64.2. On September 17, 2007, with the assistance of counsel, relator entered a plea of guilty as charged. That day, the trial judge sentenced relator to ten years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

That same day, the State filed a multiple offender bill of information, alleging relator was a second felony offender. Relator stipulated to the allegations in the multiple bill then the trial court vacated his original sentence and imposed an enhanced sentence of ten years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

On November 21, 2008, relator filed his first *pro se* application for post-conviction relief in which he alleged counsel was ineffective for failing to properly investigate his case and for failing to file an appeal. On December 4, 2008, the trial court construed this application as a request for an out-of-time appeal, granted relator such an appeal, and dismissed the application for post-conviction relief without prejudice. On appeal, this Court affirmed relator's conviction and sentence. *See State v. Hartshorn*, 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, *writ denied*, 09-2654 (La. 6/4/10), 38 So.3d 298.

On June 24, 2010, relator filed a second *pro se* application for post-conviction relief in which he raised five claims: (1) ineffective assistance of counsel for failing to investigate video surveillance from service station where crime occurred, (2) ineffective assistance of counsel for failing to interview State's sole eyewitness, (3) stipulation to multiple offender bill obtained with incorrect advice from counsel, (4) ineffective assistance of appellate counsel, and (5)

accumulative effect of errors by defense counsel. On July 12, 2010, the trial court denied relief.

Relator sought review of that denial in this Court, which found that the trial court had erred in denying relief on claim three. This Court accordingly denied the writ in part and granted it in part, remanding the matter for the trial court to consider the merits of the claim. *See State v. Hartshorn*, 10-681 (La. App. 5 Cir. 10/6/10) (unpublished writ disposition), *writ denied*, 10-2508 (La. 11/4/11), 75 So.3d 915. On remand, the trial court denied relief on this claim and this Court denied relief on supervisory review. *See State v. Hartshorn*, 10-1087 (La. App. 5 Cir. 2/1/11) (unpublished writ disposition).

On October 9, 2012, relator filed a third *pro se* application for post-conviction relief in which he argued that newly discovered evidence of an interview of the victim rendered his guilty plea constitutionally infirm. In an interview on September 7, 2012, the victim stated that the version of events contained in the police report was inaccurate: the victim was not in the vehicle at the time relator commandeered the vehicle nor was the vehicle taken from him by force or intimidation. On January 7, 2013, the trial court denied the application on the grounds that it was untimely and successive. This Court denied relief on supervisory review. *See State v. Hartshorn*, 13-87 (La. App. 5 Cir. 3/21/13) (unpublished writ disposition), *writ denied*, 13-0852 (La. 9/27/13), 123 So.3d 721.

On March 21, 2013, relator filed a fourth *pro se* application for post-conviction relief in which he claimed his application was timely in light of the United States Supreme Court decision in *Martinez v. Ryan*, -- U.S. --, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). On April 17, 2013, the trial court rejected relator's claim and denied the application as untimely.

On March 18, 2014, with the assistance of counsel, relator filed a fifth application for post-conviction relief in which he argued that counsel was ineffective for failing to investigate. Specifically, relator contended that counsel failed to request a copy of the 9-1-1 tape which demonstrated that relator committed theft, not carjacking. Since neither relator nor his attorney was aware of the 9-1-1 tape's existence prior to his guilty plea, relator claimed that his application was timely pursuant to the exception in La. C.Cr.P. art. 930.8(A)(1). On March 24, 2014, the trial court denied relief. The court found that by pleading guilty, relator waived all non-jurisdictional defects, including the right to question the merits of the State's case and the factual basis underlying his conviction. Additionally, finding that the La. C.Cr.P. art. 930.8(A)(1) exception did not apply,

2

the court further denied the application on the grounds that it was untimely, repetitive, and successive. Relator noticed his intent to seek supervisory review and filed this timely writ application.

In his brief to this Court, relator raises two assignments of error. First, he argues that the trial court erred in ruling that his application was procedurally barred as untimely and repetitive. And second, he argues that the trial court erred in finding his guilty plea waived his right to assert his Sixth Amendment right to effective assistance of counsel and his right to hold the State to its obligation to provide all exculpatory evidence to the defense.

Upon review, we find the trial court did not err in its determination that relator's application was procedurally barred as repetitive and successive under La. C.Cr.P. art. 930.4(E). Furthermore, La. C.Cr.P. art. 930.8(A) provides that "no application for post conviction relief shall be considered" if it is filed more than [two] years after the judgment of conviction and sentence have become final, unless one of Art. 930.8's exceptions apply. Although relator alleges that the tape of the 9-1-1 call reporting the incident that led to his conviction is newly discovered evidence, the documents attached to this writ application do not support that statement. Thus, we find that none of the exceptions to Art. 930.8's time limitation are present in this.

Subsection (E) of this article also provides that "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

Included in relator's writ application is a discovery receipt, dated May 25 2007, which acknowledges defendant's receipt of the "Police Report," among other things. Also included in relator's writ application is an affidavit executed by defense counsel acknowledging that relator in fact received discovery on May 25, 2007. In this affidavit, counsel also asserted that "[n]either a copy of the 911 tape, nor any reference to its existence, was provided in this discovery or in any subsequent proceedings during this representation." However, a copy of the police report, also included in relator's writ application, clearly indicates that a 9-1-1 call was made in this incident. Therefore, it is apparent that in May of 2007 relator and his attorney were in possession of documents indicating that a 9-1-1 call had been made.

Additionally, in relator's third application for post-conviction relief, he argued that newly discovered evidence rendered his guilty plea constitutionally infirm because the victim revealed in an interview on September 7, 2012 that the

3

version of events contained in the police report was inaccurate; the victim was not in the vehicle at the time relator commandeered the vehicle nor was the vehicle taken from him by force or intimidation. Therefore, it is apparent that in September of 2012, relator was aware that the version of events in the police report was inaccurate. Yet, he did not raise his ineffective assistance claim relative to the 9-1-1 call until his fifth application for post-conviction relief in March of 2014. Under these circumstances, we cannot say that relator's failure to raise this claim in a previous application was excusable.

Furthermore, La. C.Cr.P. art. 930.4(F) mandates that if a court is considering dismissing an application for failure of the petitioner to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. The Louisiana Supreme Court has held that this requirement is satisfied "without the need for further filings, formal proceedings, or a hearing" if the petitioner properly uses the Uniform Application for Post-Conviction Relief. *State ex rel. Rice v. State*, 99-0496 (La. 11/12/99), 749 So.2d 650.

In the instant case, relator did not employ the Uniform Application in his fifth application for post-conviction relief. However, in his memorandum in support thereof, he explains the reason for his failure to raise this claim in earlier proceedings was that he did not obtain the 9-1-1 tape until September of 2013. On account of this, we find the requirement of La. C.Cr.P. art. 930.4(F) was satisfied without the need for further filings, formal proceedings, or a hearing.

Accordingly, in view of the foregoing, we conclude that the trial court did not err in finding relator's application was procedurally barred as successive under La. C.Cr.P. art. 930.4. In light of these conclusions, we pretermit discussion of relator's other arguments and deny the instant writ application.

Gretna, Louisiana, this _27th_ day of May, 2014.

_____
CHIEF JUDGE SUSAN M. CHEHARDY

_____
JUDGE FREDERICKA HOMBERG WICKER

_____
JUDGE JUDE G. GRAVOIS

4

**Exhibit 10:**

**Louisiana Supreme Court Denial**

# The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

NO.   2014-KP-1344

**VS.**

**GREGORY HARTSHORN**

— — — — — —

IN RE:  Hartshorn, Gregory; - Defendant; Applying For Supervisory
and/or Remedial Writs, Parish of Jefferson,  24th Judicial District
Court Div. F, No. 07-2393; to the Court of Appeal, Fifth Circuit, No.
14-KH-331;

— — — — — —

**March 27, 2015**

Denied.

JDH

BJJ

JTK

JLW

GGG

MRC

SJC

Supreme Court of Louisiana
March 27, 2015

Deputy   Clerk of Court
For the Court

**Exhibit 11:**

**Letter From Roger Jordan To ADA Shwanna McCarthy**

# LAW OFFICES OF
## JAMES A. WILLIAMS
## A LIMITED LIABILITY COMPANY
## 706 DERBIGNY ST.
## GRETNA, LOUISIANA 70053

JAMES A. WILLIAMS, ESQ.
ROGER W. JORDAN, JR. ESQ.

TELEPHONE: 504-361-0636
FACSIMILE: 504-361-4493
rjordan@jimwilliamslaw.com

December 12, 2013

Schwannah A. McCarthy
Assistant District Attorney
Parish of Jefferson
100 Derbigny St.
Gretna, LA 70053

Re: Gregory Hartshorn
Case No.: 07-2393

Dear Ms. McCarthy:

As you are aware, I am representing Mr. Hartshorn in the above referenced case.   To follow up on our recent telephone conversation I would like to provide you some additional documentation in order to assist in your research on this matter. Mr. Hartshorn pled guilty as charged to a violation of La.R.S. 14:64.2 relative to carjacking on September 17, 2007.   He subsequently pled guilty to a multiple bill and received a sentence of ten years in the custody of the Louisiana Department of Corrections.

The victim, John Romano, reported to investigating officers that he was sitting in his vehicle, a van delivering newspapers, with his motor running at the Shell station on Lafayette St.   Mr. Romano stated that an unknown male, later identified as Gregory Hartshorn, pulled Mr. Romano from the vehicle.   Mr. Romano stated he scraped his elbow when he fell trying to regain control of the van. (Exhibit 1, Police Incident Report).   Mr. Hartshorn has maintained that his criminal conduct was a theft and not a carjacking.   However, based on the advice of trial counsel and a lack of any evidence to the contrary at that time, Mr. Hartshorn pled guilty as charged.

A recent Public Records Request has revealed a 911 tape which was never

previously provided to the defense. A review of the discovery sheet, signed on May 25, 2007, shows that a 911 tape was not provided in discovery. (Exhibit 2, Discovery Receipt). The tape was not ordered by the District Attorney's Office until May 24, 2007. (Exhibit 3, Investigator Request).   The chronology of this documentation reveals that the failure to provide this 911 tape was obviously inadvertent, but significantly detrimental to the defendant's case.

Enclosed I have provided two transcriptions of the 911 tape.   One was done through a court reporter (Exhibit 4, Transcript, Alliance Reporting, Inc.) and the second by a lay witness using audio enhancement (Exhibit 5, Transcript). On the tape, and in both transcripts, it is clear that Mr. Romano was coming out of the store when the car was stolen by Gregory Hartshorn. From a review of the reports and the tape, it would appear that Mr. Romano ran out of the store as his van was being stolen and subsequently fell when he tried to follow it.

Mr. Hartshorn endeavored to present evidence to the trial court that the criminal conduct was theft and not car jacking via pro se applications for post conviction relief. However, Mr. Hartshorn did not have the Public Records Request or the 911 tape when he filed for relief with the trial court. Nonetheless, his applications do reveal one aspect of this case, which Mr. Hartshorn has steadily maintained even before the benefit of the 911 tape that is: this case was a theft, not a car jacking.

Mr. Hartshorn seeks appropriate relief based on this new evidence.   I believed it more prudent to address this directly with your office before filing an application with the trial court for relief.   Hopefully, we can come to a mutually acceptable conclusion in this matter.

A review of Mr. Harshorn's criminal history shows that he has no prior violent offenses.   While incarcerated Mr. Hartshorn has been a model prisoner. Despite not being eligible for "good time" consideration, Mr. Hartshorn has taken advantage of many of the self help programs offered by the Department of Corrections. (Exhibit 6, Certificates of Achievement). At the present time, Wardens Jim Tillman and Howard Prince, at Hunt's Correctional Center in St. Gabriel, are preparing letters on behalf of Mr. Hartshorn. I am providing this information to reflect that Gregory Hartshorn is not only deserving from a factual standpoint but also from a rehabilitative standpoint for relief. Further, Mr. Hartshorn is an individual who has learned from this experience and become a vastly different person than he was in the spring of 2007.

Finally, from a personal note on behalf of Mr. Hartshorn, his fiancée suffers from liver failure at this time. He strongly desires to be released so that he can be with her while he still can.

If I can provide any additional information please contact me at your convenience. Thank you in advance for your consideration.

Sincerely,

(s)

Roger W. Jordan, Jr.

Enclosure
cc Cliff Milner



PRIORITY MAIL
AT RATE BOX
ANY WEIGHT

Retail

US POSTAGE PAID
$12.65

PRIORITY MAIL® 2-DAY

USPS TRACKING NUMBER

9505 5110 2863 5152 5659 44

DATE OF DELIVERY SP
USPS TRACKING™ INCL
INSURANCE INCLUDED
PICKUP AVAILABLE

Expected Delivery Day: 06/03/15

PRIORITY
★ MAIL ★

FROM: Gregory Hartsfield
250864, EHCC- Fox 3B
PO Box 174
St. Gabriel, LA 70776

TO: United States District ct
Eastern District of LA
500 Poydras Street Room (151)
New Orleans, LA 70130





PS00011000001

UNITED STATES
POSTAL SERVICE®



This package is made from post-consumer waste.
Please recycle • again.

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
GREGORY LEE HARTSHORN

## DEFENDANTS
ROBERT TANNER, WARDEN

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**15-1915**
**SECT. C MAG. 1**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care / Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [X] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite Jurisdiction Statutes unless diversity.)

28 U.S.C.§2254 - GENERAL HABEAS CORPUS

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____